**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**RHONDA ANN SLOCUM**                                  **CIVIL ACTION NO.**

**VERSUS**                                                      **20-815-JWD-EWD**

**ANDREW M. SAUL, COMMISSIONER**
**OF SOCIAL SECURITY**

**NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on September 1, 2022.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**RHONDA ANN SLOCUM**                          **CIVIL ACTION NO.**

**VERSUS**                                      **20-815-JWD-EWD**

**ANDREW M. SAUL, COMMISSIONER
OF SOCIAL SECURITY**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Rhonda Ann Slocum ("Plaintiff") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Title II disability insurance benefits ("DIB") and Title XVI supplemental security income ("SSI").[1] Plaintiff has filed a Brief Regarding Social Security Appeal,[2] the Commissioner has filed an Opposition Memorandum,[3] and Plaintiff has filed a Reply Brief.[4] Based on the applicable standard of review under 42 U.S.C. § 405(g), substantial evidence supports the Commissioner's decision, and the administrative law judge applied the correct legal standards. Accordingly, it is recommended that the Commissioner's decision be affirmed.

## I.    PROCEDURAL HISTORY

On February 7, 2019, Plaintiff filed an application for DIB and SSI, alleging disability

---

[1] *See* AR pp. 176-182 (DIB Application) and AR pp. 1-5 (Notice of Appeals Council Action). References to documents filed in this case are designated by "(R. Doc. [docket entry number(s)] p. [page number(s)]." References to the record of administrative proceedings filed in this case are designated by "AR p. [page number(s)]." Although Plaintiff indicates that she is appealing the denial of "disability benefits under Titles II and XVI of the Social Security Act" (R. Doc. 12, p. 1), the record only contains Plaintiff's DIB Application. AR pp. 176-182. That application indicates that Plaintiff has "filed or intend(s) to file for SSI." *Id*.
[2] R. Doc. 12.
[3] R. Doc. 16.
[4] R. Doc. 19.

beginning January 18, 2018.[5] Plaintiff's claim was initially denied on July 2, 2019[6] and was denied on reconsideration on September 13, 2019.[7] Thereafter, Plaintiff timely requested a hearing before an administrative law judge ("ALJ").[8] A hearing was held on April 15, 2020, at which Plaintiff, who was represented by an attorney, testified.[9] Vocational Expert ("VE") Crystal Younger also testified.[10] On April 27, 2020, the ALJ issued a notice of unfavorable decision.[11] Plaintiff timely filed a counseled request for review by the Appeals Council.[12] On October 5, 2020, the Appeal's Council denied review.[13]

On December 3, 2020, Plaintiff timely filed her Complaint in this Court.[14] Accordingly, Plaintiff exhausted her administrative remedies before filing this action for judicial review and the Appeals Council's decision is the Commissioner's final decision for purposes of judicial review.[15]

## II.    THE ALJ'S DECISION

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity.[16] The regulations require the

---

[5] AR pp. 176-177. *See also* AR p. 14.

[6] AR pp. 14. *See also* AR pp. 67-81 (denial of DIB at initial level).

[7] AR pp. 14. *See also* AR pp. 82-96, 126-129 (denial of DIB at reconsideration level).

[8] AR pp. 131-133.

[9] AR pp. 31-66. The record indicates that Plaintiff has been represented by "Peter J. Lemoine (Attorney) [and] his associates Michael A. LeBouef (Attorney) and Annie L. Newton (EDPNA Certified)" since April 22, 2019. AR pp. 118-119, 171. Plaintiff was previously represented by Jeff Nicholson, an attorney, with respect to prior applications for DIB and/or SSI. *See* AR pp. 100, 114.

[10] AR pp. 14, 24, 31, 58-62. Ms. Younger curriculum vitae is also in the record. AR. p. 282.

[11] AR pp. 11-29.

[12] AR p. 6.

[13] AR pp. 1-5.

[14] R. Doc. 1.

[15] *See* 20 C.F.R. § 404.981 ("The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision. The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised. You may file an action in a Federal district court within 60 days after the date you receive notice of the Appeals Council's action.").

[16] 20 C.F.R. § 404.1505; 20 C.F.R. § 416.905.

ALJ to apply a five-step sequential evaluation to each claim for benefits.[17] In the five-step sequence, the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe medically determinable impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and (5) the impairment(s) prevents the claimant from doing any other work.[18]

The burden rests upon the claimant to prove disability throughout the first four steps of this five-step process.[19] If the claimant is successful at the first four steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity ("RFC"), age, education and past work experience, that he or she is capable of performing other work.[20] If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work.[21]

Here, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the January 10, 2018 alleged onset date.[22] At the second step, the ALJ found that Plaintiff had the following severe impairments: Depression, Anxiety, and Borderline Intellectual Function, which significantly limited her ability to perform basic work activities.[23] The ALJ also considered the cumulative effects on her ability to function of Plaintiff's history of bilateral foot pain and physical findings indicating obesity and determined that the "objective findings…provide no additional

---

[17] 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.
[18] *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).
[19] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).
[20] 20 C.F.R. § 404.1520(g)(1).
[21] *Muse*, 925 F.2d at 789.
[22] AR p. 16.
[23] AR p. 17, *citing* SSR 85-28.

limitation to function because of obesity."[24] At the third step, the ALJ found that Plaintiff's impairments, considered alone or in combination, did not meet or medically equal the criteria of 12.04 "Depressive, bipolar and related disorders"; 12.06 "Anxiety and obsessive-compulsive disorders"; or 12.11 "Neurodevelopmental disorders."[25] In making this finding, the ALJ considered the revised "paragraph B" criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.00(E),[26] and the effects of those impairments on Plaintiff's functional abilities.[27] Although the ALJ found Plaintiff's mental impairments to be "severe," he also found that the impairments did not meet or equal the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 because Plaintiff's mental impairments did not result in "at least two 'marked' limitations or one 'extreme' limitation" in any functional area.[28] The ALJ also found that the evidence "fails to establish" the requirements of the paragraph C criteria (that the impairments were "serious and persistent") because "[a]lthough there is a medically documented history of the existence of the mental disorder(s) over a period of at least two years, there is no evidence of minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life."[29]

---

[24] AR p. 17.

[25] AR pp. 17-19. Listed impairments are descriptions of various physical and mental illnesses and abnormalities generally characterized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a claimant to show that his impairment matches a listed impairment, he must demonstrate that it meets all the medical criteria specified in the Listing. An impairment that exhibits only some of the criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 529-32 (1990), (*superseded by statute on other grounds*). *See* 20 C.F.R. § 404.1525 and 20 C.F.R. § 416.925.

[26] The revised "paragraph B" criteria were in effect when Plaintiff's application was filed and when the Appeals Council issued its Notice of Action on October 5, 2020. AR p. 1. *See Williams v. Berryhill*, No. 16-01367, 2018 WL 1006057, at *9 (W.D. La. Jan. 17, 2018) (*citing* Revised Medical Criteria for Evaluating Mental Disorders, 81 FR 66138-01, 2016 WL 5341732 (Sept. 26, 2016) and explaining that "[t]he SSA stated that it will use the new rules on or after their effective date in any case in which it makes a determination or decision. The SSA expects the Federal courts will review its final decisions using the rules that were in effect at the time it issues the decisions.").

[27] AR pp. 17-19.

[28] AR pp. 17-19.

[29] AR pp. 18-19.

Next, the ALJ found that Plaintiff had the RFC[30] to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> [T]he claimant's ability to understand, remember and carryout instructions is limited to simple, routine tasks; use of judgment is limited to simple work-related decisions; occasional interactions with supervisors and coworkers; occasional/non-confrontational interactions with the general public; and with a consistent setting and schedule.[31]

The ALJ then evaluated Plaintiff's RFC to determine whether, despite her severe impairments, she was able to do any of her past relevant work as a "Garden Worker" (Dictionary of Occupational Titles[32] ("DOT") 406.684-018).[33] The ALJ found that Plaintiff was unable to perform her past relevant work based on the VE's testimony that an individual with Plaintiff's age, education, work experience, and RFC would be unable to do so.[34]

Proceeding to the fifth step, the ALJ relied on the Medical-Vocational Guidelines as a framework and the testimony of the VE to make his disability finding.[35] The VE testified that someone with Plaintiff's age, education, work history, and RFC could perform the requirements of the following occupations: (1) stock clerk (DOT 922.687-058), medium exertional level, SVP[36]

---

[30] "Residual functional capacity" is a measure of a claimant's capacity to do physical and mental work activities on a regular and sustained basis. It is the foundation of the findings at steps four and five of the sequential evaluation process. 20 C.F.R. § 404.1545; 20 C.F.R. § 416.945.

[31] AR p. 19.

[32] The DOT comprises a categorical listing of job titles in the United States, along with descriptions of the maximum requirements for each job, including the associated exertion levels and reasoning abilities. *Sasich v. Colvin,* No. 15-461, 2016 WL 7826808, at *4 (M.D. La. Nov. 14, 2016), report and recommendation adopted, No. 15-461, 2017 WL 188133 (M.D. La. Jan. 17, 2017), citing *Gaspard v. Social Security Admin. Com.'r*, No. 07-943, 609 F.Supp.2d 607, 612 (E.D. Tex. Apr. 8, 2009). The Commissioner primarily relies on the DOT for information about the requirements of work in the national economy at steps four and five of the sequential evaluation process. SSR 00-04P (S.S.A. 2000), 2000 WL 1898704.

[33] AR p. 23.

[34] AR p. 23. *See also* 20 C.F.R. § 404.1565 and 20 C.F.R. § 416.965.

[35] AR pp. 23-24, *citing* 20 C.F.R. Part 404, Subpart P, Appendix 2. The Commissioner may use VE testimony at steps four and five of the sequential evaluation process to resolve complex vocational issues and provide evidence at the hearing before the ALJ. SSR 00-04P, 2000 WL 1898704.

[36] "Specific Vocational Preparation" level refers to the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a particular occupation. *See* DOT, app. C. *See also Jackson v. Astrue*, No. 11-28, 2011 WL 4943547, at * 9, n. 8 (N.D. Tex. Aug. 23, 2011). "Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP

level 2, with 80,500 jobs nationally; (2) commercial cleaner (DOT 381.687-018), medium exertional level, SVP level 2, with 982,200 jobs nationally; and (3) hospital cleaner (DOT 323.687-010), medium exertional level, SVP 2, with 445,900 jobs nationally.[37] Thus, the ALJ found that Plaintiff had not been under a disability from the January 10, 2018 alleged onset date through December 31, 2019, the date Plaintiff was last insured.[38] The Appeals Council denied review of the ALJ's decision that Plaintiff was not disabled.[39]

## III.    PLAINTIFF'S ASSIGNMENTS OF ERROR

On appeal, Plaintiff argues three assignments of error, for which she contends the "only solution" is "remand."[40] First, Plaintiff contends that the ALJ "did not follow the jurisprudence of *Audler v. Astrue*, 501 F.3d 466 (5th Cir. 2007)" because he "did not explain how Plaintiff would not meet Listing 12.05 for an Intellectual Disorder, despite a diagnosis of borderline intellectual functioning and its recognition by the ALJ that this was a severe impairment."[41] Specifically, Plaintiff argues that the ALJ "failed to meet the *Audler* standard" because the ALJ "did not examine the requirements of [Listing] 12.05 and compare Plaintiff's impairments to its requirements" or even "mention [Listing] 12.05 at all."[42]

---

of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." SSR 00-4P, at *3.

[37] AR pp. 23-24 and 60-62. All three identified occupations have a reasoning level of two. *See* DOT. The VE also testified that there were several "light exertional level" occupations in the national economy that someone with Plaintiff's age, education, work history, and RFC could perform, including: (1) cleaner (DOT 323.687-014), light exertional level, SVP level 2, with 445,300 jobs nationally; (2) packer (DOT 920.687-014), light exertional duty, SVP level 2, with 315,200 jobs nationally; and (3) assembler (DOT 701.687-010), light exertional level, SVP level 2, with 296,500. AR pp. 61. Cleaner has a reasoning level of one, while packer and assembler have reasoning levels of two. *See* DOT. Citing SSR 00-4P, the ALJ specifically found that the VE's testimony was consistent with the information contained in the DOT. AR p. 24.

[38] AR pp. 24-25.

[39] AR pp. 1-3.

[40] R. Doc. 12. Although Plaintiff's Brief only lists two "issues presented," a careful reading of those issues shows that Plaintiff believes the ALJ committed error in three distinct ways. Accordingly, the undersigned will separately address each of Plaintiff's assigned errors.

[41] R. Doc. 12, p. 2 (cleaned up to remove "the" before Plaintiff for consistency, which has been done throughout this Report when quoting Plaintiff's briefs).

[42] *Id*. at p. 5.

Second, Plaintiff contends the ALJ erred by not "follow[ing] federal procedural regulations for examining mental health impairments."[43] Plaintiff argues that the ALJ's evaluation of the Paragraph B criteria is flawed because the ALJ "dismiss[ed] the opinions of a treating doctor, Dr. [Kumari L.] Moturu, and of Dr. [Seth] Kunen, an independent consultative examiner hired by the [Commissioner]," "did not reference any medical records whatsoever," and "substitute[d] his own judgment" over that of "Plaintiff's treating physicians."[44] Additionally, Plaintiff contends that the ALJ erred by not finding that she meets or medically equals the Listing 12.05 requirements, considering that Plaintiff "scored only one point above an automatic qualification for disability under Listing 12.05, as a 70 [IQ score] would have made her qualified for benefits."[45]

Third, Plaintiff contends that the "ALJ failed to articulate a rational, medical, and evidentiary basis for ruling that the Plaintiff could perform the activities identified by the residual functioning capacity on a regular and continuous basis."[46] Regarding this assignment of error, Plaintiff contends that the ALJ erred because (1) the ALJ failed to explain how Plaintiff's medical records, including those from Dr. Moturu, led to the RFC and/or "why there was no discussion of the medical records and limitations noted by Dr. Moturu and Dr. Kunen"; and (2) there is a conflict between Plaintiff's RFC, which indicates that Plaintiff's ability to understand, remember and carryout instructions is limited to simple, routine tasks, and the occupations identified by the VE— all of which required a reasoning level of 2, which "[a]ccording to Appendix C of the DOT"

---

[43] *Id*. at p. 2.

[44] *Id*. at pp. 5-7. Plaintiff contends that the ALJ improperly afforded Dr. Moturu's opinion "little persuasive weight…because he could not read the notes that would have support Dr. Moturu's decision as they were handwritten and illegible to him." *Id*. at p. 6. Plaintiff further contends that the ALJ was "required to inquire further" and "could have asked Dr. Moturu questions by means of a post-hearing interrogatory or a phone call to the physician to clarify whatever portions of the notes could not be understood." *Id*.

[45] *Id*.

[46] R. Roc. 12, p. 2.

involves application of "common sense understanding to carry out detailed but uninvolved written and oral instructions."[47]

In response, the Commissioner contends that Plaintiff failed to meet her burden to establish that she met Listing 12.05 and, in any event, the ALJ properly determined that Plaintiff did not meet Listing 12.05 (or Listings 12.04, 12.06, and 12.11) because Plaintiff did not meet either Subsection A of Listing 12.05 or the "demanding and stringent" criteria in Subsection B of Listing 12.05 (which are also included in Listings 12.04, 12.05, and 12.11).[48] Next, the Commissioner contends that the "ALJ properly determined that Plaintiff could perform other work in the national economy" because "a limitation to simple work does not preclude jobs with reasoning levels of two and there is no other challenge to the VE's testimony supporting the ALJ's decision."[49] Accordingly, the Commissioner contends that there is no conflict between Plaintiff's RFC and the VE's testimony regarding other work in the national economy.[50]

As to the first assignment of error, Plaintiff argues in her Reply that "[w]hile the Commissioner's Brief argued that the Plaintiff did not meet each and every requirement of Listing 12.05, Intellectual Disorder, particularly subsection B, the Plaintiff has argued otherwise."[51] In particular, Plaintiff contends that the ALJ's determination that Plaintiff has "no more than a moderate impairment in the four areas of function, and thus could not meet [Listing 12.05] was incorrect" because the ALJ "failed to fully consider the opinion submitted by the Plaintiff's treating medical provider, Dr. Moturu."[52] Regarding the second assignment of error, Plaintiff dismisses the "great many cases summoned by the Commissioner and the quotes from a large

---

[47] R. Doc. 12, pp. 7-9 (cleaned up).
[48] R. Doc. 16, pp. 5-8.
[49] R. Doc. 16, pp. 8-10.
[50] R. Doc. 16, pp. 8-10.
[51] R. Doc. 19, p. 1.
[52] R. Doc. 19, pp. 1-4.

amount of jurisprudence" for the proposition that "definitions contained in Appendix C of the DOT do not prohibit Plaintiff from performing jobs ranked at reasoning levels above simple."[53] Plaintiff reiterated her argument that the ALJ erred by failing to explain how Plaintiff's RFC (based on the VE's testimony) does not conflict with the DOT.[54] Plaintiff contends that "[r]emand is the only solution to the ALJ's lack of use of proper procedure and lack of substantial evidence to support the decision."[55]

## IV.    LAW AND ANALYSIS

### A.    Applicable Law

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards.[56] If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal.[57] Lack of substantial evidence to support the Commissioner's decision is also grounds for reversal.

If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed.[58] Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a

---

[53] R. Doc. 19, pp. 4-5 (cleaned up).
[54] R. Doc. 19, pp. 4-5.
[55] R. Doc. 19, p. 5.
[56] *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).
[57] *Bruno, M v. U.S. Commissioner, Social Security Administration,* No. 19-886, 2020 WL 5269741, at *3 (W.D. La. Aug. 6, 2020), report and recommendation adopted sub nom., *Bruno v. Commissioner, Social Security Administration*, No. 19-886, 2020 WL 5261150 (W.D. La. Sept. 3, 2020), citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) and *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981).
[58] *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (superseded by statute on other grounds, *see Stancle v. Colvin*, No. 15-405, 2016 WL 3172784, at *8, n. 11 (E.D. Tex. June 7, 2016)).

preponderance.[59] A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[60] Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side.[61] In applying the substantial evidence standard, the court must review the entire record as whole, but may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision.[62]

### B. The ALJ's Decision Properly Applied the Proper Legal Standards, Including with Respect to Mental Health Impairments and Ability to Perform Other Work, and is Supported by Substantial Evidence

#### 1. *Audler v. Astrue*[63] is Distinguishable

In her first allegation of error, Plaintiff contends that her case must be remanded because the ALJ failed to follow the standard set in *Audler*. There, the claimant filed an application for DIB "on account of back and neck problems, migraine headaches, and depression." After a hearing, an ALJ found that claimant was not disabled because she could perform her past work. The Appeals Council denied review. The district court affirmed the Commissioner's decision. However, the Fifth Circuit vacated the district court's judgment and remanded the case to the district court with direction to remand the case to the Commissioner for further proceedings. Specifically, the Fifth Circuit found that the ALJ erred when:

> At step three, the ALJ summarily concluded that "[t]he medical evidence indicates that the claimant has status post lumbar laminectomy, cervical disc herniation, headaches and chronic neck and back pain, impairments that are severe within the meaning of the Regulations but not severe enough to meet

---

[59] *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[60] *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001), quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000).

[61] *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

[62] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (superseded by statute on other grounds, *see Stancle,* 2016 WL 3172784, at *14).

[63] 501 F.3d 446 (5th Cir. 2007).

or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." The ALJ did not identify the listed impairment for which Audler's symptoms fail to qualify, nor did she provide any explanation as to how she reached the conclusion that Audler's symptoms are insufficiently severe to meet any listed impairment. "Such a bare conclusion is beyond meaningful judicial review." *Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir.1996).[64]

The Fifth Circuit also found that the ALJ's error was not harmless—*i.e.*, it affected the claimant's substantial rights—because "[a]bsent some explanation from the ALJ to the contrary, [claimant] would appear to have met her burden of demonstrating that she meets the Listing requirements of § 1.04A," given the evidence in the record from claimant's treating physician and the fact that "no medical evidence was introduced to contradict" claimant's treating physician.[65]

Here, the ALJ did not "summarily conclude" that Plaintiff failed to "meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4."[66] Rather, the ALJ's decision specifically references four listings—1.02 "Major dysfunction of a joint(s)"; 12.04 "Depressive, bipolar and related disorders"; 12.06 "Anxiety and obsessive-compulsive disorders"; and 12.11 "Neurodevelopmental disorders"—and explains, in detail, why Plaintiff does not meet any listings related to mental impairments (Listings 12.04, 12.06, or 12.11), including why the revised "paragraph B" criteria and "paragraph C" criteria are not met.[67] A conclusion that Plaintiff does not meet three specific, identified listings accompanied with an explanation of why is far

---

[64] *Id*. at 448.

[65] *Id*. at 448-49.

[66] Notably, Appendix 1, Subpart P of Part 404, Regulation No. 4 is the "Listing of Impairments," which contains 15 separate groupings of impairments running the gamut from "low birth weight and failure to thrive" to "neurological disorders" to "immune system disorders."

[67] AR pp. 17-19 (evaluating the paragraph B criteria and explaining the evidence supporting the ALJ's determination that Plaintiff had moderate limitation in understanding, remembering or applying information; mild limitation in interacting with others; moderate limitations in concentrating, persisting or maintaining pace; and mild limitation in adopting or managing oneself; and finding that the paragraph C criteria was not met because there was no evidence of minimal capacity to adapt to changes in environment or new demands). At the hearing, Plaintiff's counsel specifically noted that the focus of Plaintiff's claims was on her mental impairments. AR pp. 38-39 ("I would suggest that the real issues are here are more section 12, the mental impairments …. [T]he real crux of her impairments falls into section 12").

different than a summary conclusion that a claimant does not meet any listing without an explanation. *Audler* is distinguishable, and the ALJ did not fail to meet the *Audler* standard. Accordingly, Plaintiff's first allegation of error fails.

> **2.    The ALJ Applied the Appropriate Standard in Determining that Plaintiff Did Not Meet Any of the Impairments Listed Under Section 12.00 "Mental Disorders, and Substantial Evidence Supports that Determination**

In her second allegation of error Plaintiff argues (1) that the ALJ did not follow the appropriate procedure for analyzing mental health impairments because he improperly dismissed and/or improperly weighed the opinions of Plaintiff's treating physician, Dr. Moturu (and to a lesser extent the consultative examiner, Dr. Kunen); and (2) that Plaintiff does, in fact, meet all Listing 12.05 requirements.

> a.    Substantial Evidence Supports the ALJ's Decision that Plaintiff Does Not Meet Any Section 12.00 Listing, Including Listing 12.11 "Neurodevelopmental Disorders," Which Includes Borderline Intellectual Functioning

At bottom, the next three issues comprising the first argument are that the ALJ erred in failing to mention and/or conclude that Plaintiff met Listing 12.05. This argument is unavailing for several reasons. First, the ALJ properly analyzed whether Plaintiff, whose treating physician, Dr. Moturu, diagnosed her with borderline intellectual function,[68] met the requirements of Listing 12.11 "Neurological disorders," which includes "borderline intellectual functioning. Second, the ALJ applied the proper procedure and considered (and weighed) the medical evidence of record before concluding that Plaintiff does not meet Listing 12.11 (or Listings 12.04 or 12.06).

At step three of the five-step sequential process, the ALJ must determine whether a claimant's impairment(s) meets or equals the severity of a listed impairment in 20 C.F.R. Part 404,

---

[68] R. Doc. 12, pp. 2, 5-6. *See also* AR pp. 315, 326, 348.

Subpart P, Appendix 1 of the regulations.[69] A claimant must meet all criteria of a listing; impairments manifesting less than all the criteria do not qualify, regardless of severity.[70] The burden rests upon the claimant to prove disability throughout the first four steps of this five-step process.[71] "If the plaintiff fails to demonstrate the specified medical criteria, the court will find that substantial evidence supports the ALJ's finding that listings-level impairments are not present."[72] Here, the ALJ determined that Plaintiff's impairments, including her depression, anxiety, and borderline intellectual function, did not meet or medically equal an impairment listed in Appendix 1—chiefly, Listing 12.11 "Neurodevelopmental disorders" but also Listings 1.02 "Major dysfunction of a joint(s) (due to any cause)"; 12.04 "Depressive, bipolar and related disorders"; and 12.06 "Anxiety and obsessive-compulsive disorders."[73]

Plaintiff does not object to the ALJ's findings as to any of these impairments.[74] Instead, Plaintiff primarily focuses on Listing 12.05 and whether Plaintiff meets all the criteria necessary to establish that listing. However, as the SSA's POMS[75] explains, Listing 12.05 "does not include the mental disorders that we evaluate under…neurodevelopmental disorders (12.11)."[76] Relatedly, the disorders under Listing 12.11 are "characterized by onset during the developmental period, that is, during childhood or adolescence, although sometimes they are not diagnosed until

---

[69] *Masterson*, 309 F.3d at 271.

[70] *Selders*, 914 F.2d at 619; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). *See also Mayo v. Saul*, No. No. 19-1658, 2021 WL 219187, at *4 (W.D. La. Jan. 4, 2021).

[71] *Muse*, 925 F.2d at 789.

[72] *Mayo*, 2021 WL 219187, at *4, *citing Selders*, 914 F.2d at 620.

[73] AR pp. 17-18.

[74] *See, generally*, R. Docs. 12, 19.

[75] POMS is the SSA's "handbook entitled Program Operations Manual Systems. Although the POMS may provide useful insights, it has not legal force and does not bind the courts. *See Schweiker v. Hansen*, 405 U.S. 785, 789, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981). As a handbook representing internal policy, the POMS simply informs the courts of present operating procedures of SSA employees." *Puente v. Astrue*, 738 F.Supp.2d 669, 688 & n. 3 (S.D. Tex. 2008).

[76] *See* POMS, § DI 34001.032 Mental Disorders (effective 03/24/2017 – present), available at https://secure.ssa.gov/poms.nsf/lnx/0434001032 (last accessed August 19, 2022).

adulthood."[77] "Symptoms and signs may include, but are not limited to, underlying abnormalities in cognitive processing (for example, deficits in learning and applying verbal or nonverbal information, visual perception, memory, or a combination of these); deficits in attention or impulse control; low frustration tolerance; excessive or poorly planned motor activity; difficulty with organizing (time, space, materials, or tasks); repeated accidental injury; and deficits in social skills." Importantly, POMS provides "examples of disorders that SSA evaluates under Listing 12.11 'Neurodevelopmental disorders,' which includes *borderline intellectual functioning*," among other disorders.[78] Considering the significant references in the record to Plaintiff's involvement in motor vehicle accident at or around the age of 14 (*i.e.*, during adolescence) which left her with a traumatic brain injury and in a coma for 3 weeks,[79] combined with Dr. Moturu's diagnosis of borderline intellectual functions and the ALJ's determination that this is a severe impartment, the ALJ correctly analyzed whether Plaintiffs impairments (or combination of impairments) "met or medical equaled the severity" of Listing 12.11 (and Listings 12.04 and 12.06), rather than 12.05 as Plaintiff now argues (and argued during the hearing).[80] The ALJ determined that Plaintiff did not meet all Listing 12.11 requirements, and substantial evidence in the record supports that determination.

To satisfy the Listing 12.11 Listing requirements, Plaintiff must show that she meets paragraphs A *and* B. Paragraph A requires medical documentation of paragraph 1, 2, or 3:

---

[77] *Id*.

[78] *Id*. (emphasis added).

[79] *See, e.g.*, AR p. 105 (Plaintiff testing regarding the head injury she sustained when she was fourteen"); p. 358 ("She did have a serious MVA"); p. 361 ("She also has a history of a TBI"); p. 367 ("Pt. said the MVA [at] age 14 was beginning of her problems and was magnified by her mother's death in 1989"); p. 371 ("[P]t. [and] traumatic brain injury subject to mva at 13"); p. 378 ("Medical history that may be a contributing factor to depression including Traumatic brain injury at 14 years old s/t MVA. States coma x 3 weeks").

[80] AR pp. 17-20; AR. p. 38 ("ATTY: Your honor, I would suggest that the real issues are here more section 12, the mental impairments. I think the listings, including 12.02, the neurocognitive disorder; 12.05, intellectual disorders are the two that particularly come into play."). However, given Plaintiff's insistence that she meets Listing 12.05, the undersigned will address Listing 12.05 in the following section.

1. <u>One</u> or both of the following:
   a. Frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks; or
   b. Hyperactive and impulsive behavior (for example, difficulty remaining seated, talking excessively, difficulty waiting, appearing restless, or behaving as if being driven by a motor").
2. Significant difficulties learning and using academic skills; or
3. Recurrent motor movement or vocalization.

Paragraph B requires at least two marked limitations or one extreme limitation in the following functional areas: (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.[81]

Neither the ALJ's decisions nor the parties' briefing discuss whether Plaintiff meets the Paragraph A criteria.[82] However, whether or not Plaintiff meets the Paragraph A criteria is immaterial because the ALJ found that Plaintiff did not meet the paragraph B criteria in 12.11.[83] Specifically, citing record evidence, the ALJ found (1) that Plaintiff had a "moderate limitation" in "understanding, remembering, or applying information";[84] (2) that Plaintiff had a "mild limitation" in "interacting with others";[85] (3) that Plaintiff has a "moderate limitation" regarding "concentrating, persisting, or maintain pace";[86] and (4) that Plaintiff had a "mild limitation" in

---

[81] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.11(B). A "marked" limitation means the claimants functions in this area independently, appropriately effectively, and on a sustained basis is seriously limited. *Id*. at § 12.00(F)(2)(d). An "extreme" limitation is the inability of the claimant to function in this area independently, appropriately, effective, and on a sustained basis. *Id*. at § 12.00(F)(2)(e).

[82] *See, generally*, AR pp. 15-25; R. Docs. 12, 16, & 19.

[83] AR pp. 17-19.

[84] AR p. 18. The ALJ noted (1) that Plaintiff is "able to do simple math," (2) that she "could not use a computer well," (3) the she sustained a TBI in a "remote motor vehicle accident at age 13," (4) that she has a valid driver's license, and (5) and that Plaintiff claims she cannot remember things—*e.g.*, overwatering and/or forgetting to water plants and writing things down but still "mess[ing] things up." *Id*. The ALJ cited to the Consultative Examination Report, prepared by Dr. Kunen (AR 343-348), which confirmed that Plaintiff was able to perform simple math problems, was "able to pay attention through the entire evaluation;" give socially responsible answers to social judgment problems; and can take care of most of her daily life activities.

[85] AR p. 18. The ALJ noted that Plaintiff has a "boyfriend/fiancé, has worked in a social setting, and she goes shopping." *Id*.

[86] AR p. 18. The ALJ noted the same items as he did with respect to "understanding, remembering, and applying information. *See* fn. 85, *supra*.

"adapting or managing oneself."[87] Because Plaintiff's mental impairments did not result in at least two marked limitations or one extreme limitation in any of the functional areas, the ALJ determined that paragraph B criteria under Listing 12.11 are not met, and that Plaintiff did not meet all requirements under Listing 12.11.[88]

On appeal, Plaintiff argues that she meets the paragraph B criteria (albeit in connection with Listing 12.05).[89] Plaintiff states in her Reply: "While the Commissioner's Brief argued that Plaintiff did not meet each and every requirement of Listing 12.05, Intellectual Disorder, particularly subsection B, the Plaintiff has argued otherwise."[90] Despite listing the four functional areas, Plaintiff does not include any argument—or cite any record evidence—showing that she has two marked limitations or one extreme limitation in any of those areas. Instead, Plaintiff's sole argument is that the ALJ erred in assessing the paragraph B criteria because he "failed to fully consider the opinion" of Plaintiff's treating physician, Dr. Moturu, which, according to Plaintiff, show that she has "extreme and marked deficits in her ability to function mentally, particularly noting her marked deficits in dealing with the public," because the ALJ could not "read" or "decipher" Dr. Moturu's notes.[91]

Putting aside the fact that Plaintiff only identified one category in which she claims to have a marked limitation (and not two), as well as the fact Dr. Moturu diagnosed Plaintiff with

---

[87] AR pp.18. The ALJ noted (1) that Plaintiff has a boyfriend/fiancé, and she goes shopping; (2) that Plaintiff testified she "does chores sometimes, clean[s], dusts, mop[s] the floors, and clean[s] the bathroom"; and (3) that Plaintiff testified she "cooks simple meals like spaghetti, sandwiches, and microwavable meals." *Id*.

[88] *Id*.

[89] R. Doc. 19.

[90] R. Doc. 19, at pp. 1-3. Although Plaintiff argues in her original Brief that the ALJ erred by "not explain[ing] how the Plaintiff [does] not meet Listing 12.05 for an Intellectual Disorder, despite a diagnosis of borderline intellectual function," Plaintiff does not actually address the paragraph A, paragraph B, and/or paragraph C criteria of Listing 12.05, much less argue that she meets those criteria. Importantly, the paragraph B(2) criteria under Listing 12.05 is identical to the paragraph B criteria under Listing 12.11 (and Listings 12.04 and 12.06). Relatedly, the ALJ also discussed the Paragraph C criteria—*i.e.,* the "serious and persistent" criteria—and found that Plaintiff did not meet those criteria. Plaintiff does mention the Paragraph C criteria in her briefing, much less argue that those criteria are met.

[91] *Id*.

borderline intellectual function, which is discussed in the ALJ's decision and which, according to POMS is properly addressed under Listing 12.11 (not 12.05), Plaintiff mischaracterizes the ALJ's treatment of Dr. Moturu's notes. The ALJ found that Plaintiff's borderline intellectual functioning (diagnosed by Dr. Moturu) was a severe impairment.[92] In determining Plaintiff's RFC at Step 3, the ALJ explained:

> The evidence of record reveals a history of conservative treatment with medication of major depressive disorder with anxiety by Kumari L. Moturu, Ph.D. [Ex. C1F/17-36]. During the period from the alleged onset date, January 10, 2018, through the date last insured, December 31, 2019, Dr. Moturu's progress notes are largely illegible but does show the claimant treated every few months. Overall, the treatment records from February 2018 through July 2019 indicate that the claimant is stable on medications [Exs. C1F/5-17 and C5F]. The check-the-box form mental status examinations generally show no significant abnormalities.

Later, the ALJ explained why he found Dr. Moturu's opinions unpersuasive as follows:

> As for medical opinions and prior administrative medical findings, the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions, including those from medical sources. The undersigned has fully considered the medical opinions and prior administrative medical findings in your case as follows: Letter from Dr. Moturu indicates the claimant shows a marked problem interacting appropriately with the public; and mostly mild and no limitations in the other areas. Dr. Moturu also noted the claimant is most likely of sub average intelligence, and would not have an excessive rate of absenteeism (March 22, 2019) [Ex. C2F]. Dr. Moturu's assessment is not persuasive. The overall objective medical record does not support the assessment. Moreover, Dr. Moturu's own treatment records do not support the assessment because they are handwritten and largely illegible [Exs. C1F and C5F].

The ALJ discussed the other medical evidence of record, including the treatment records of Elizabeth Miletello, N.P.; the Report from Dr. Kunen, the consultative examiner; the record from Elizabeth Waldrop, LCSW, and Plaintiff's testimony before concluding that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms."[93] However, the ALJ also concluded that Plaintiff's "statements concerning the

---

[92] AR p. 17.
[93] AR pp. 18-21.

intensity, persistence and limited effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."[94] Given this, the ALJ determined that evidence of record does not support Plaintiff's "allegation that she is incapable of all work activity," and that the record does not support a more restrictive RFC.[95] Further, the ALJ noted that the "record does not contain any opinions from treating or examining physicians indicated that [Plaintiff] is disable or even has limitations great than those determined in this decision."[96]

Substantial evidence supports the ALJ's decision, particularly with respect to the paragraph B criteria. For example, regarding the "understand, remember, or apply information" criterion, the record shows that Plaintiff attributes her difficulty remembering things to a traumatic brain injury she suffered at the age of 13 or 14.[97] Plaintiff claims her inability to remember things led to her making mistakes at her job and being fired.[98] However, the record also shows that Plaintiff (1) obtained a GED from East Ascension school, attended Baton Rouge VoTech school but quit instead of "go[ing] to a different class because she "just couldn't remember how to do math problems…[or] English things";[99] (2) is able to do simple math; (3) can use a computer (though "not well") but "doesn't have service" and has trouble remembering her password;[100] (4) has a driver's license but does not drive (but used to drive for work);[101] and (5) learned how/when to water plants because her employer "showed her."[102] Further, Plaintiff indicated that she "open[ed]

---

[94] AR. p. 21.
[95] AR pp. 21.
[96] AR p. 22.
[97] *See, e.g.*, AR pp. 331, 358, 378.
[98] *See, e.g.*, AR pp. 43, 230, 344, 358, 378.
[99] AR pp. 34, 40-41.
[100] AR pp. 51.
[101] AR pp. 46. Plaintiff also testified that as part of her last job she would drive herself to the mall to water flowers. AR p. 53.
[102] AR p. 54-55. Plaintiff also testified that it became "harder for her to remember to do things when they gave more responsibility." AR p. 55 (cleaned up).

shop" while working at Billy Heroman's flower shop.[103] Importantly, at the conclusion of the VE's hearing testimony, Plaintiff asked the ALJ if she could interject, and she explained that she could not, in fact, perform work as a packer (a job which the VE testified is available in significant numbers in the national economy that someone with Plaintiff's education, experience, and RFC could perform) because she previously did that "a long time ago"—*i.e.*, over 15 years ago—but was fired for making mistakes.[104] Plaintiff's ability to recall a specific job 15 years prior and use it as an example of why she could not perform one of the jobs identified by the VE undercuts her argument that she has more than a moderate limitation on her ability to understand, remember, and apply information, which was found by the ALJ.

The record also supports the ALJ's determination that as to the "interact with others" criterion, Plaintiff has no more than a mild limitation. For example, the record shows that Plaintiff: (1) lives in a home, and her parents (and occasionally her fiancé);[105] (2) has a fiancé, who she met while working at the mall;[106] (3) goes shopping and to the grocery store (but usually "calls" in her grocery list because she cannot stand up for long);[107] and (4) has worked in social settings, particularly over the course of her 8-year history at her previous employer.[108] In an April 29, 2019 Function Report, Plaintiff reported that she gets along with authority figures, such as bosses, "very well," and that she has never been fired from a job due to problems getting along with other people."[109]

---

[103] AR p. 220.
[104] AR pp. 63-64.
[105] AR pp. 39-40, 46
[106] AR pp. 48, 52-53.
[107] AR p. 46.
[108] AR pp. 217 (Plaintiff described her job with Nature's Own as follows: "water, clean, take care [of] plants, help customers"), 219 (Plaintiff indicated she worked the cash register while working at Heroman's flower shop); AR pp. 275 (describing her duties at Heroman's flower shop as "cashier; help customers").
[109] AR pp. 235.

Considering the "concentrate, persist, or maintain pace" criterion, the records shows that Plaintiff's limitation is no more than moderate. For example, Plaintiff testified that she sometimes "cleans, dusts, mops the floors, and cleans bathrooms," although "not well" according to her.[110] One of Plaintiff's treating physicians indicated that Plaintiff would be able to perform her job duties working at a flower shop if she wore appropriate shoes,[111] and another indicated that Plaintiff should exercise more (although Plaintiff has not complied with this advice).[112] Further, Plaintiff held her last job for nearly 8 years, while also dealing with many of the same impairments she now contends prevent her from working at all.

Finally, the record again supports the ALJ's decision that Plaintiff has no more than a mild limitation with respect to the "adapt or manage oneself" criterion. Plaintiff testified that she "sometimes" cooks meals for herself and her father, including spaghetti, sandwiches, TV dinners, and "cold stuff."[113]She also testified that she is able to sew "buttons on [shirts]" and "fix" holes in her clothing.[114] Plaintiff also likes to "quilt and crochet."[115] Indeed, Plaintiff acknowledged in the April 29 Function Report that she has "no problem" with personal care, and that her "illness, injuries, or conditions" do not affect her ability to "dress, bathe, care for[her] hair, shave, feed [her]self, [or] use the toilet."[116] Further, she does not need any special reminders to take care of personal/grooming needs or to take her medicine.[117] This report also indicates that Plaintiff "cleans [the] kitchen, floor[s], and bathrooms" and "mows" the yard without needing any help or

---

[110] AR pp. 46.
[111] AR pp. 44-45, 49, 368.
[112] AR pp. 47-48, 332.
[113] AR pp. 50-51.
[114] AR pp. 51-52.
[115] AR p. 233.
[116] AR pp. 230.
[117] AR pp. 231.

encouragement to do these things.[118] Notably, when asked to "[d]escribe the changes in [her] activities since the illnesses, injuries, or conditions began," Plaintiffs responded, "None."[119]

Critically, Dr. Moturu's treatment records are consistent with and support the ALJ's decision regarding the paragraph B criteria, despite Plaintiff's argument to the contrary.[120] Indeed, despite Dr. Moturu's response to a single check-the-box question in a March 22, 2019 "Medical Source Statement (Mental)" indicating that Plaintiff is "[not] capable of performing full-time (8 hours a day, five days a week) remunerative, competitive employment on a day-to-day, sustained basis," the remainder of the March 22 statement and his treatment records undercut this conclusion. For example, the same March 22 statement shows that he did not consider Plaintiff to have any extreme limitations and only one marked limitation—namely, with respect to Plaintiff's ability to "interact with the public."[121] As to the first functional area, Dr. Moturu's statement indicates that while Plaintiff had a moderate limitation on her ability to "remember locations and work-like procedures," she only had mild limitations on her ability to "understand, remember and carry out simple instructions," "understand, remember and carry out detailed instructions," and "make judgments on simple work-related."[122] Concerning the second functional area, Dr. Moturu found that Plaintiff has a marked limitation on her ability to interact appropriately with the public.[123] But, this finding alone does not conclusively establish that Plaintiff has a marked limitation in the

---

[118] AR p. 231.

[119] AR p. 233.

[120] *Compare* AR pp. 323-326 (and also AR pp. 289-321, 351-356) *with* R. Doc. 12, p. 3 (citing AR pp. 18, 322-326) (Plaintiff contends that Dr. Moturu's records show Plaintiff has "extreme and marked deficits in her ability to function mentally, particularly noting her marked deficits dealing with the public.").

[121] AR pp. 324-326. Plaintiff's lone "marked" limitation was in her ability to "interact appropriately with the public." AR pp. 325. This finding alone does not conclusively establish that Plaintiff has a marked limitation in the "ability to interact with others" functional area, considering that the same record indicates (1) that Plaintiff has no limitations with respect to "accept[ing] instructions and responds appropriately to criticism from supervisors" or "get[ing] along with co-workers or peers without (unduly) distracting them or exhibiting behavioral extremes."

[122] AR pp. 324-326.

[123] *Id*.

"ability to interact with others" function area, considering that the same record also indicates that Plaintiff has no limitations with respect to "accept[ing] instructions and responds appropriately to criticism from supervisors" or "get[ing] along with co-workers or peers without (unduly) distracting them or exhibiting behavioral extremes." As to the third functional area, Dr. Moturu's statement shows that Plaintiff has marked limitations on her ability to "maintain attention and concentration for extended periods," "the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," and "the ability to coordination with or proximity to others without being (unduly) distracted by them." The statement also indicates that Plaintiff has only a mild limitation on her ability to "sustain an ordinary routine without special supervision."[124] Regarding the fourth functional area, Dr. Moturu's statement shows that Plaintiff had moderate limitations on her "ability to complete a normal workday and workweek without interruptions from her psychology based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" and "ability to maintain socially appropriate behavior"; a mild limitation on her ability to "be aware of normal hazards and take appropriate precautions"; and no limitations on her "ability to ask simple questions or request assistance" or on her "ability to maintain basic standards of neatness and cleanliness."[125] As such, Dr. Moturu's opinion as to the ultimate issue—*i.e.*, whether Plaintiff is disabled—is not supported by his records.

Relatedly, Dr. Moturu's March 22 statement indicates that he believes Plaintiff is of "sub average intellect."[126] Again, Dr. Moturu's conclusion is not entirely supported by the rest of his records. For example, Dr. Moturu's records show he treated Plaintiff about 20 times between

---

[124] AR pp. 325.
[125] AR pp. 325-326.
[126] AR p. 326.

January 26, 2016 and July 11, 2019.[127] Those records each contain a small section for handwritten notes followed by a series of check-the-box questions. One of those questions asks Dr. Moturu to indicate whether Plaintiff's "intellectual functioning" is "average, above average, or below average." On most of these treatment records, Dr. Moturu checked "average,"[128] but he also checked "above average" on one.[129] None have the "below average" box checked. Likewise, these records show that Plaintiff was generally appropriately groomed, alert, had appropriate affect, was fully oriented to time, place, person, and location; had "immediate, recent, short term, and long term" memory; had a logical and reality-based thought process/content; had sufficient concentration, and good/appropriate insight and good/logical judgment (though sometimes limited).[130]

Plaintiff has not directed the Court to any record evidence—from Dr. Moturu or anyone else—indicating that Plaintiff is wholly unable to perform any job available in significant numbers in the national economy. Instead, Plaintiff argues that the ALJ improperly dismissed the opinions of Dr. Moturu, and that the ALJ erred by not inquiring further, given that the ALJ "could have asked Dr. Moturu questions by means of a post-hearing interrogatory or a phone call to…clarify whatever portion of the notes could not be understood."[131] Additionally, the ALJ specifically noted

---

[127] *See* AR pp. 290-321
[128] AR pp. 290, 292, 294, 296, 298, 300, 304, 306, 308, 310, 312, 314, 353, 355.
[129] AR p. 302.
[130] *See, e.g.*, AR pp. 290, 292, 300, 302, 306, 308, 310, 355, *But see, e.g.*, AR pp. 294 (noting that insight was "limited/concrete" and judgment was "limited"), 296 (but noting that insight was "limited/concrete, judgment was "limited," and attention and concentration were "deficient, easily distractible, short attention span, and poor/adequate concentration), 304 ((noting that insight was "limited/concrete" and judgment was "limited," affect was dysphoric, among other things), 312 (noting that insight was "limited/concrete" and judgment was "limited"), 316 & 317 (noting that judgment and insight were "impaired"), 318 (noting that Plaintiff's insight was "limited/concrete"), 319. Those records are generally consistent with the records of Dr. John Gary Chaney, Elizabeth Waldrop, LCSW, and Richard B. Williner, DPM, at RKM Primary Care (AR pp. 357-376) and Mark C. Mouton, MD, and Elizabeth Miletello, F.N.P. (AR pp. 330-341, 377-381).
[131] R. Doc. 12, p. 6.

that he discounted Dr. Moturu's evaluation because it did not comport with the medical records, as detailed above.

Here, the Commissioner also ordered a CE at the initial level because the evidence was insufficient to make a determination as to whether Plaintiff is disabled.[132] The record explains that Dr. Moturu was not contacted to perform the CE because Plaintiff's "medical source(s) is unwilling to perform the CE(s),"[133] so Dr. Kunen performed the CE.[134] Notably, Dr. Kunen did not address Plaintiff's RFC and did not indicate that Plaintiff is incapable of working.[135] Nor did he state (or even specifically address) whether Plaintiff had limitations in the four functional areas.[136] Instead, after noting that Plaintiff's "anxiety, personality issues, and IQ are significant factors that have impacted her ability to maintain employment, Dr. Kunen acknowledged that her "prognosis was guarded to fair."[137] But Dr. Kunen also found (1) that Plaintiff was well oriented to person, place, time, and situation"; (2) that Plaintiff's "receptive and expressive skills are adequately developed"; (3) that Plaintiff was "able to pay attention through the entire evaluation"; (4) that her "fund of knowledge is adequately, but not well developed" (5) that, despite "difficulty with math word problems," Plaintiff "demonstrated adequate calculation skills" and should be able to "manage her funds"; (6) that she was able to "interpret two of four proverbs but only one of four

---

[132] *See* AR p. 73 ("Is a CE(s) required? Yes…[R]eason(s) for which a CE(s) is required: The evidence as a whole, both medical and non-medical, is not sufficient to support a decision on the claim.").

[133] *Id*.

[134] AR pp. 70-71, 75, 86, 343-348.

[135] AR pp. 344-348.

[136] *Id*. The record indicates that Dr. Kunen was asked to "comment" on Plaintiff's (1) "ability to understand and follow directions"; (2) ability to "understand[] and cooperat[e]"; (3) "ability to concentrate and maintain attention, restriction of daily activities, and social interaction." AR p. 211. While portions of Dr. Kunen's report relate to these issues, Plaintiff's abilities with respect to these areas are not specifically addressed. *See, e.g.*, AR p. 346 (adaptive behaviors) & p. 348 (summary and recommendations).

[137] AR pp. 348.

logic problems"; (7) that she provided "three socially responsible answers" to "three social judgment problems"; and (8) that she can take care for most of her [Activities of Daily Living]."[138]

For these reasons, substantial evidence in the record, including the records of Dr. Moturu and Dr. Kunen, support the ALJ's decision that Plaintiff does not meet any listing, including Listing 12.11 "Neurological Disorders," which encompasses Dr. Morturu's borderline intellectual function diagnosis. Accordingly, this assignment of error is also without merit.

> **b.    Plaintiff Cannot Show that She Meets Listing 12.05**

Listing 12.05 is comprised of two paragraphs—A & B. To satisfy the Listing 12.05 requirements, Plaintiff must meet either Paragraph A or B. Paragraph A is satisfied by meeting three requirements:

> 1.    Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and
> 2.    Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and
> 3.    The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

Here, there is no argument from Plaintiff (much less evidence establishing) that she meets all three requirements of Paragraph A. Indeed, the record shows that Plaintiff does not have "significant deficits in adaptive functioning currently manifested by [her] dependence upon others for personal needs." As Dr. Kunen and others noted, Plaintiff "can take care of most of her ADL's"; has no problem with meeting her personal needs, such as dressing, bathing, caring for her hair, shaving, feeding herself, using the toilet, etc.; and has no limitations on her "ability to maintain basic

---

[138] AR p. 348.

standards of neatness and cleanliness"; and is able to do basic house work, such as cleaning, cooking, and laundry, and mow the yard.[139]

Because Plaintiff cannot establish that she meets Paragraph A, Plaintiff must meet Paragraph B to satisfy the Listing 12.05 requirements. Paragraph B states:

> B.  Satisfied by 1, 2, and 3 (see 12.00H):
>
> 1.  Significantly subaverage general intellectual functioning evidenced by a or b:
>     a.  A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
>     b.  A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and
> 2.  Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>     a.  Understand, remember, or apply information (see 12.00E1); or
>     b.  Interact with others (see 12.00E2); or
>     c.  Concentrate, persist, or maintain pace (see 12.00E3); or
>     d.  Adapt or manage oneself (see 12.00E4); and
> 3.  The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

As the text of Paragraph B makes clear, Plaintiff must establish subparts 2 and 3, even if she had scored a 70 or below on the IQ test (which she did not). Thus, Plaintiff's argument that "Plaintiff scored only one point about an automatic qualification for disability under Listing 12.05, as a 70 would have made her qualified for benefits" is inconsistent with Paragraph B.[140] However, assuming Plaintiff's IQ score establishes paragraph B(1), Plaintiff still does not meet Listing 12.05 because the record does not show that she has two marked limitations or one extreme limitation in the four functional areas. Critically, the Listing 12.05 paragraph B(2) criteria are identical to the

---

[139] AR pp. 230-231, 326, 348.
[140] *See* R. Doc. 12, p. 6.

Listing 12.11 paragraph B criteria. As explained in detail above, the ALJ's determination that Plaintiff's limitations do not meet those criteria is supported by substantial evidence in the record. For the same reasons, Plaintiff has not met her burden of establishing that she meets all requirements of Listing 12.05. Thus, the ALJ did not err by failing to discuss Listing 12.05 and, even if he did, such error was harmless as it did not affect Plaintiff's substantial rights because the record shows she cannot meet the Paragraph B(2) criteria.

### 3.    There is No Conflict Between Plaintiff's RFC and the VE's Testimony Regarding the Jobs Available in the National Economy

Plaintiff's third assignment of error relates to the ALJ's failure to "resolve" and "explain" a purported conflict between Plaintiff's RFC and the jobs the VE testified someone with Plaintiff's age, education, work experience, and RFC could perform that exist in substantial numbers in the national economy. Specifically, Plaintiff argues that the VE testified that she could perform three jobs—stock clerk, laborer, and hospital cleaner—all of which have an SVP level 2 and reasoning level 2 (*i.e.*, the "ability to apply commonsense understanding to carry out **DETAILED** but uninvolved written or oral instructions) despite Plaintiff's RFC limiting her ability to perform a full range of work at all exertional levels, subject to the following limitation: "claimant's ability to understand, remember and carryout instructions is limited to **SIMPLE**."[141] Because Plaintiff's RFC limits her to jobs involving a "simple capacity,"[142] Plaintiff argues that "all reasoning level 2 jobs are thus limited" and remand is appropriate to resolve the detailed versus simple conflict. However, Plaintiff's argument is purely semantic and unpersuasive, as well as contrary to significant legal authority.

---

[141] R. Doc. 12, pp. 9-10, *citing* "Appendix C of the DOT" (emphasis added by Plaintiff). *See also* R. Doc. 19, p. 4.
[142] R. Doc. 12, p. 9.

The Commissioner cites and discusses numerous cases for the proposition that there is no conflict between "simple" work and jobs requiring an SVP level 2 (or level 3).[143] Indeed, in *Sasich v. Colvin*,[144] this Court dismissed a claimant's argument that she could not perform the three jobs identified by the VE—all of which had a Reasoning Level of 3" because "her limitation to simple, repetitive tasks with one to three-step instructions corresponds to a Reasoning Level of 2 or lower."[145] This Court explained that the "Commissioner's policy concerning conflicts between VE testimony and the DOT provides that in all cases 'the adjudicator has an affirmative responsibility to ask about any possible conflict between…VE…evidence and information in the DOT.'"[146] In the event of an "*apparent unresolved* conflict between VE testimony and the DOT," the ALJ "must elicit a reasonable explanation for the conflict before relying on the VE at Step Five."[147] However, because the VE, when asked by the ALJ, "did not inform the ALJ of any conflicts…and no conflict was suggested by Plaintiff's counsel on cross examination," the Court determined that nothing at the hearing should have put the ALJ on notice that an apparent conflict existed. Further, regarding the claimant's argument that a "direct and obvious" conflict nonetheless existed between her being limited to "simple, repetitive tasks" and the VE's testimony that she could perform jobs with a reasoning level 3, the Court explained, "Multiple courts have found no direct conflict between a limitation to simple, repetitive tasks with one to three-step instructions (or unskilled work) and jobs requiring a Reasoning Level of three."[148] After finding that no direct or apparent conflict existed, the Court explained that the "record reflects an adequate basis for the ALJ's reliance on

---

[143] *See* R. Doc. 16, pp. 8-10, and cases discussed there.
[144] No. CV 15-461-JWD-RLB, 2016 WL 7826808 (M.D. La. Nov. 14, 2016), report and recommendation adopted, 2017 WL 188133 (M.D. La. Jan. 17, 2017).
[145] *Id*. at *3. Notably, like Plaintiff here, the *Sasich* claimant, who was represented by the same counsel as Plaintiff, argued that "the ALJ committed reversible error by relying on the VE's testimony because it is in 'direct conflict' with the DOT."
[146] *Id*. at *5 (citing SSR 00-4P, 2000 WL 1898704, at *4).
[147] *Id*.
[148] *Id*. (collecting cases).

the VE's testimony that claimant could perform the three identified jobs, despite the mental limitations found by the ALJ" and held (1) that "[b]ecause the VE's testimony was not challenged below and has not been contradicted by claimant during this proceeding, the record contains an adequate basis for the ALJ's reliance on the VE at Step Five" and (2) that the ALJ's reliance on the VE's testimony was not error.[149]

Similarly, in this case, the ALJ determined that, pursuant to SSR 00-4P, the VE's "testimony is consistent with the information contained in the [DOT]."[150] During the hearing, the VE did not identify any conflict between Plaintiff's RFC and the identified jobs the VE testified someone with Plaintiff's age, education, work experience, and RFC could perform.[151] Likewise, Plaintiff's counsel did not suggest any conflict during the hearing.[152] Notably, Plaintiff's counsel's cross-examination of the VE was limited to a single question that involved whether an individual would be able to sustain the employment the VE identified if the individual would be off task for 15 percent of the workday. The VE responded in the negative.[153]

Further, as relevant case law makes clear, there is no conflict between an RFC limiting Plaintiff's ability to understand, remember, and carryout instructions to "simple, routine tasks" and jobs requiring a reasoning level 2. Rather than address the case law or point this Court to record evidence contradicting the VE's testimony,[154] Plaintiff simply attempts to dismiss the

---

[149] *Id*. The Court noted that "[u]nder the circumstances, any conflict [was] indirect or implicit, at best," which could not "be entertained in the proceeding because it was not developed in the adversarial context at the administrative hearing," as the claimant "failed to raise the existence of…during the hearing." *Id*. at *6, citing *Gaspard v. Social Security Admin. Com'r.*, 609 F.Supp. 2d 607, 617 (E.D. Tex. Apr. 8, 2009) (cleaned up).

[150] AR p. 24.

[151] AR pp. 58-65.

[152] AR p. 62.

[153] AR p. 62. Although neither Plaintiff nor Plaintiff's counsel suggested a conflict between the VE's testimony and the DOT, Plaintiff interjected herself at the conclusion of the VE's testimony to tell the ALJ that she could not, in fact, work as a packer like the VE testified because she previously worked at a costume jewelry company filling orders but was let go because she made mistakes. AR pp. 63-64. Though Plaintiff's interjection does not suggest a conflict, it does, however, show that Plaintiff was able to comprehend the VE's testimony and make a contemporaneous objection based on her work experience that was "a long time ago."

[154] *See, e.g.*, R. Doc. 19, p. 4 (Reply to Issue 2), containing a single citation to the AR—Plaintiff's RFC on AR p. 19.

Commissioner's argument and reverts to the semantic argument that someone limited to "simple" work cannot perform reasoning level 2 jobs which require the ability to carry out "detailed but uninvolved instructions."[155] Plaintiff's argument is at odds with relevant case law, and she makes no effort to distinguish those cases.

Further, the record shows the ALJ had an adequate basis for relying on the VE's testimony that someone of Plaintiff's age and with her education, work experience, and RFC could perform the identified jobs, despite Plaintiff's mental limitations. The ALJ found that Plaintiff had the RFC to perform a "full range of work at all exertional levels but with the following nonexertional limitations: The claimant's ability to understand, remember and carry out instructions is limited to simple, routine tasks; use of judgment is limited to simple work-related decisions…"[156] Plaintiff has not challenged the ALJ's mental RFC finding. Considering the mental limitations in Plaintiff's RFC, the VE testified that Plaintiff could perform the jobs of stock clerk, commercial cleaner, and hospital cleaner. Each of those jobs is classified in the DOT as unskilled, with an SVP level 2 and a reasoning level of 2. As noted, the ALJ cited SSR 00-4P in his decision and found that the VE's testimony was consistent with the DOT. "Under the circumstances, 'the vocational expert's clear and unchallenged testimony that [Plaintiff] could perform the identified jobs…is adequate…to support the ALJ's reliance on the VE's testimony at Step Five."[157] Moreover, beyond her semantic argument, Plaintiff does not point to any record evidence or legal authority supporting her

---

[155] R. Doc. 19, p. 4 (Plaintiff attempts to dismiss the case law cited by the Commissioner as follows: "The Commissioner summons a great many cases and quotes a large amount of jurisprudence to defend the position that the [DOT] rating of reasoning levels, and its definitions contained in its Appendix C, do not prohibit Plaintiff from perform jobs ranked at reasoning levels above simple.").
[156] AR pp. 19-20.
[157] *Sasich*, 2016 WL 7826808, at * 6, quoting *Carey*, 230 F.3d at 147, and citing *Abel*, 2011 WL 1099890, at *7 (VE's testimony that claimant limited to simple, repetitive, unskilled work could perform at a reasoning level of 3 was not challenged or contradicted in any manner; therefore, "the record reflects an adequate basis for the ALJ's reliance on the Vocational Expert's testimony.").

argument that her mental limitations preclude her from performing the reasoning level 2 jobs identified by the VE.

Because there was no conflict for the ALJ to resolve or explain, the ALJ did not err. The record also reflects an adequate basis for the ALJ to rely on the VE's testimony. Accordingly, Plaintiff's third and final assignment of error is without merit.

## V.    CONCLUSION AND RECOMMENDATION

Here, the ALJ considered the record evidence, explained his evaluation of that evidence, and his findings are based on the proper legal standards and are supported by substantial evidence in the record. Accordingly, the ALJ's finding that Plaintiff is not disabled must be affirmed even if there is evidence to the contrary, and even were this Court to disagree with the ALJ's decision.[158]

Thus, **IT IS RECOMMENDED** the final decision of the Commission be **AFFIRMED**, and this action be **DISMISSED WITH PREJUDICE** under sentence four of 42 U.S.C. § 405(g).

Signed in Baton Rouge, Louisiana, on September 1, 2022.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[158] *See Reid,* 2019 WL 6970763, at *18, n. 197 ("In support of his decision, the ALJ cited more than a scintilla of evidence. No matter how much evidence exists to the contrary, a decision supported by substantial evidence should not be disturbed. See 42 U.S.C. § 405(g)."). *See also Newton,* 209 F.3d at 452 (in applying the substantial evidence standard, the court must review the entire record as whole, but may not reweigh the evidence, try the issues *de novo,* or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision).